400 S.E.2d 300

**STATE of West Virginia**

v.

**James THARP.**

No. 19595.

Supreme Court of Appeals of West Virginia.

Dec. 14, 1990.

J. David Judy, III, Judy & Judy, Moorefield, for James Tharp.

Roger W. Tompkins, Atty. Gen., Richard M. Riffe, Sr. Asst. Atty. Gen., Atty. General's Office, Charleston, for State of W.Va.

PER CURIAM:

The appellant, James Tharp, appeals his conviction by a jury in the Circuit Court of Hardy County of grand larceny and burglary. The appellant contends that the trial court erred in allowing the victim to testify at trial as to the identity of the appellant, and that there was insufficient evidence to support the jury verdict. We find no reversible error.

On July 21, 1989, at approximately 7:00 p.m., a man entered the home of the victim, Virginia Jennings, carrying an ax. He took the money she had in her wallet and threatened to "split" her with the ax unless she told him where all of the money in the house was located. The perpetrator had a cut over his right eye and forced Mrs. Jennings to bandage it. The perpetrator beat the eighty-six-year-old victim with the back of the ax, which fractured her left humerus and severely bruised her. He also used the ax to chop the telephone cord and to damage the table on which the phone was placed. After admitting to him that she had some money in a metal locker in the upstairs of her home, the perpetrator bodily dragged Mrs. Jennings up to her bedroom and forced her to open it.[1] The perpetrator then cut the telephone cord upstairs and used it to tie Mrs. Jennings to the bed.

After the perpetrator left, Mrs. Jennings was able to loosen the telephone cords wrapped around her wrists and to free herself. She waited in her home until daylight and then went outside to get help from her neighbor, Edward Hill, who travelled past her home each morning on his way to work. Mrs. Jennings told Mr. Hill that she had been beaten and robbed, and he noticed that she was severely bruised. Mr. Hill went back to his home to get his wife, Patricia Hill. Mrs. Hill and her aunt, Gladys Miller, then went to Mrs. Jennings' home to stay with her until the police arrived.

Iva Jennings, the victim's daughter, and the police subsequently arrived at Mrs. Jennings' residence. They found that the glass on the front door was cracked, and that the telephone cord and a table had been cut. They also noticed cigarette butts in an ashtray and a box of bandaids laying on the kitchen table. They found that there was no money in Mrs. Jennings' wallet and that there were telephone cords and strings tied to her bed. Her ax, her rifle and some shells were also missing.

Mrs. Jennings gave a statement to the police before she was taken to the hospital. Although she could not identify the perpetrator by name, she described him as a short man with a cut over his right eye which was bleeding.

Later in the day, the police received a phone call from a member of the appellant's family who had found the rifle near the home of the appellant's grandmother. The police then questioned the appellant at his grandmother's home about the rifle. He eventually admitted that he had taken the rifle from Mrs. Jennings' home, but he denied that he had beaten her.

The grand jury returned an indictment charging the defendant with aggravated robbery, malicious assault and burglary. After a trial by jury, the appellant was convicted of grand larceny and burglary. The trial court sentenced the appellant to a period of not less than one nor more than ten years for the conviction of burglary, and to a period of not less than one nor more than fifteen years for the conviction of grand larceny. The trial court ordered that these sentences be served consecutively, and gave the appellant credit for the 137 days he served in the county jail. This case is now before us on appeal from the appellant's conviction.

I

The appellant first contends that the trial court erred in allowing Mrs. Jennings to testify at trial as to the identity of the appellant. The appellant points out that Mrs. Jennings could not initially iden-

---

1. Also located upstairs in Mrs. Jennings' bedroom was an automatic .22 caliber rifle, and some shells in a dish on her bureau.

tify the perpetrator, and that the description given by Mrs. Jennings the day after the incident did not match the appellant. The appellant maintains that Mrs. Jennings identified him as the perpetrator only after his name was suggested to her by Deputy Sheriff Robert Ferrell when he told her the appellant had admitted taking her rifle.

■ The factors to be considered in determining whether the identification of a suspect is reliable, was stated by this Court in syllabus point 3 of *State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989):

'In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification [or testimony as to the out-of-court identification itself] a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' Syllabus Point 3, as amended, *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476, 478 (1976).

The evidence shows that the victim in this case was an eighty-six-year-old woman who lived alone. Although she was not able to identify the perpetrator immediately after the crime, she did have the opportunity to view him while the crime was being committed. Mrs. Jennings bandaged the perpetrator's head and obviously had an opportunity to view him at a close distance. Although there are some inconsistencies between Mrs. Jennings' identification of the appellant[2] and the testimony of

other witnesses who had seen the appellant the night of the incident, there were several things she identified which would indicate the appellant was the perpetrator. In her statement, Mrs. Jennings described the perpetrator as 25 to 30 years old, that he was a small man with small hands,[3] and most importantly, that he had a cut over his right eye. Trooper R.S. Shambach and Deputy Sheriff Robert L. Ferrell, both testified that the appellant had a fresh cut over his right eye the morning after the incident.

The appellant places great emphasis on the fact that Mrs. Jennings would not have named him as the perpetrator had Deputy Ferrell not disclosed to her that the appellant had stolen her rifle. Yet, the appellant presented evidence to the jury at trial regarding Mrs. Jennings' inability to initially identify the perpetrator, and Deputy Ferrell's disclosure to Mrs. Jennings. Deputy Ferrell testified to the jury that the morning after the incident, Mrs. Jennings did not know who the perpetrator was, but that she identified the appellant as the perpetrator after Deputy Ferrell told her the appellant had taken her rifle. Furthermore, the appellant pointed out the inconsistencies in Mrs. Jennings' identification to the jury, and also emphasized that the appellant was the victim's greatnephew. Thus, the jury was fully apprised of the irregularities in Mrs. Jennings' identification of the appellant.

Considering the criteria set forth in *State v. Spence, supra*, we do not believe that Mrs. Jennings' in-court identification of the appellant as the perpetrator should have been suppressed. Although there were inconsistencies regarding the appellant's clothing and tattoos in her description, which were pointed out to the jury, Mrs. Jennings did describe the perpetrator as a small man, between the ages of 25 and 30,

---

**2.** In the description of the perpetrator she gave to the police, Mrs. Jennings stated that he did not have any tattoos, and that he was wearing a t-shirt and a pair of canvas shoes. There was testimony at trial that the appellant was seen by many witnesses walking around the area without a shirt or shoes, and that he had many

tattoos. We further note, however, that although the appellant had many tattoos on his body, one defense witness, who saw him without his shirt, did not notice them.

**3.** Deputy Ferrell testified at trial that the appellant had "little hands."

with a cut over the right eye. The appellant, who admitted to being at Mrs. Jennings' home the night of the incident and stealing her rifle, fit this description.

## II

The appellant next contends that there was insufficient evidence to support his conviction of grand larceny and of burglary. With regard to his burglary conviction, the appellant maintains that there was no evidence at trial that he entered the home of the victim against her will, or with the intent either to commit a felony or any act of violence against her. He further asserts, with respect to his grand larceny conviction, that there was no evidence presented as to the value of the rifle and that "the victim was obviously prepped" to testify that the amount of money taken from her home was in excess of $200.

The standard of review to test the sufficiency of the evidence presented at trial was stated by this Court in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

First, we shall consider the elements necessary to prove burglary. *W.Va. Code*, 61–3–11(a) [1973], provides, in relevant part:

> If any person shall, in the nighttime, break and enter, or enter without break-

ing, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a felony or any larceny therein, he shall be deemed guilty of burglary.

Viewing the evidence in the light most favorable to the prosecution with regard to the burglary conviction, the evidence indicates that it was dark outside at the time the incident occurred. Mrs. Jennings testified that the appellant came through the front door of her home armed with an ax in his right hand and threatened to "split" her with the ax if she did not tell him where all the money in the house was.[4] Witnesses who arrived at Mrs. Jennings' home the day after the incident testified that there was a crack in the glass of the front door, the telephone cords had been cut, and a table had been cut. Furthermore, Mrs. Jennings' money and other personal property was taken. This evidence was sufficient to convince the jury that the appellant had committed burglary.

Next, we shall identify the elements of grand larceny. The elements of common-law grand larceny were stated by this Court in *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981): "To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof." *W.Va. Code*, 61–3–13 [1977], the state's grand larceny statute, provides that the property shall have a value of $200 or more.

Mrs. Jennings testified that the appellant took approximately $100 from her wallet, another $100 laying on the kitchen table for her telephone bill, an automatic rifle, some ammunition, an ax, $20 off the dresser upstairs, and some pennies and Canadi-

---

**4.** We stated in syllabus point 1 of *State v. Plumley*, 181 W.Va. 685, 384 S.E.2d 130 (1989):

> Under *W.Va.Code*, 61–3–11(a) [1973], the essential requirement of burglary committed in the nighttime is that the defendant 'enter ... with intent to commit a felony or any larceny.' The intent and the acts of the defendant are controlling, and the consent of the occu-

pant to entry is not a defense when the defendant is shown to have entered through fraud or threat of force with the requisite criminal intent. The statutory requirement of entry is also fulfilled when a person with consent to enter exceeds the scope of the consent granted.

an fifty-cent pieces. Witnesses testified that Mrs. Jennings' wallet was empty, her ax was missing, and her rifle and shells were missing. Moreover, the appellant's grandmother testified that when the appellant left her home in the evening prior to the time Mrs. Jennings' house was burglarized, the appellant tried, without success, to get some money from her so that he could buy beer.[5] Although there was conflicting testimony presented to the jury regarding the amount of money taken from the appellant's home, there was sufficient evidence to convince the jury of the appellant's guilt beyond a reasonable doubt.

Thus, for the foregoing reasons, we affirm the judgment of the Circuit Court of Hardy County.[6]

Affirmed.

**5.** The appellant began drinking the morning of the incident at 7:00 a.m. He had consumed approximately eighteen beers, and had shared two pints of liquor with two other men before 5:30 p.m. He then returned to his grandmother's home, laid down for about an hour, and then drank three beers before leaving his grandmother's home. The appellant testified that "it was starting to turn dark" when he walked towards Mrs. Jennings' home.

**6.** The appellant has also asserted that the evidence and the verdict do not support the consecutive sentences imposed by the court. The appellant has not cited any cases to support his assertion. We do note, however, that the appellant was convicted of burglary in 1982, and after serving sixty-seven days in jail, he was placed on probation for a period of two years. The appellant's adult arrest record also indicates an offense for trespassing but states that the disposition of that offense is unknown.

In *State v. Cooper,* 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983), we identified two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution: (1) whether the sentence for the particular crime shocks the conscience of the court and society; and (2) whether the sentence violates the proportionality principle found in Article III, Section 5 of the *West Virginia Constitution.* The sentence imposed on the appellant in the case before us does not meet either of these tests, and thus, we find no merit in this assignment of error.