416 S.E.2d 253

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Terry A. GILL, Defendant Below, Appellant.

No. 20155.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided March 24, 1992.

Michele L. Rusen, Asst. Pros. Atty., Parkersburg, for appellee.

Joseph P. Albright, Jr., Albright, Bradley & Ellison, Parkersburg, for appellant.

MILLER, Justice:

The defendant, Terry A. Gill, appeals a final order of the Circuit Court of Wood County, dated June 21, 1990, upholding a jury verdict convicting him of fourteen sex-related crimes. The defendant was convicted of three counts of first-degree sexual assault for violating W.Va.Code, 61–8B–3(a)(2) (1984),[1] and three counts of first-degree sexual abuse under W.Va.Code, 61–8B–7(a)(3) (1984).[2] These same acts were charged and convictions were obtained under W.Va.Code, 61–8D–5 (1988),[3] which relates to sexual abuse by a parent, custodian, or guardian. Two additional convictions were obtained under W.Va.Code, 61–8D–5, arising from the defendant forcing the victim to urinate in his mouth on two separate occasions. These acts were not charged under the general sexual offense statute. The trial court sentenced the defendant to a term of not less than eighty-

eight years or more than one hundred seventy years in the West Virginia State Penitentiary.

On appeal, the defendant's primary assignment of error is that his convictions and multiple punishments for the same acts under our sexual offenses statute, W.Va. Code, 61–8B–1, *et seq.*, and our sexual abuse by parent, guardians, or custodians statute, W.Va.Code, 61–8D–5, violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution.

I.

FACTS

On June 10, 1989, Laura L., age eleven, flew from Anchorage, Alaska, to Parkersburg, West Virginia, to visit her mother. Laura had lived the previous year with an aunt and uncle and had attended fifth grade in Alaska. As soon as the school year was over, Laura returned to Parkersburg where she was to resume living with her mother. Shortly after her plane arrived in Parkersburg, Laura's mother told her that she would be spending the night in the home of a former neighbor, the defendant.[4] When they arrived at the defen-

---

1. W.Va.Code, 61–8B–3(a)(2), provides:

 "(a) A person is guilty of sexual assault in the first degree when:

 \* \* \* \* \* \*

 "(2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less."

2. W.Va.Code, 61–8B–7(a)(3), provides:

 "(a) A person is guilty of sexual abuse in the first degree when:

 \* \* \* \* \* \*

 "(3) Such person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less."

3. W.Va.Code, 61–8D–5(a), provides:

 "*In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows:* If any parent, guardian or custodian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custo-

dy or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such guardian or custodian shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five nor more than ten years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than five years nor more than ten years." (Emphasis added).

 In 1991, this provision was amended to increase the prison sentence for violation of the statute from five-to-ten years to five-to-fifteen years. *See* 1991 W.Va. Acts ch. 41.

4. Laura lived with her mother in Parkersburg during her second-, third-, and fourth-grade school years. During that time, the defendant lived across the street from the victim. Her mother's testimony at trial as to why she left her daughter with the defendant was somewhat bi-

dant's home, the defendant's roommate, Paul Faulkenberry, girlfriend, Jean Fulton, and six-year-old daughter, Terry Lynn, were present.

During the evening of June 10, 1989, the defendant sexually assaulted the victim. Specifically, the defendant was charged with licking the victim's vagina through her underwear, licking her vagina after he had removed her panties, sticking his finger in her anus, and touching her vagina with his hand. These four acts resulted in two convictions under W.Va.Code, 61–8B–3(a)(2), two convictions under W.Va.Code, 61–8B–7(a)(3), and four convictions under W.Va.Code, 61–8D–5.[5] The defendant was also convicted of another count under W.Va.Code, 61–8D–5, for forcing the victim to urinate into his mouth.

On the morning of June 11, 1989, the defendant assaulted the victim again. The defendant was charged with performing cunnilingus on the victim and touching the victim's vagina with his hand. For these two acts, the defendant was convicted of one count under W.Va.Code, 61–8B–3(a)(2), one count under W.Va.Code, 61–8B–7(a)(3), and two counts under W.Va.Code, 61–8D–5. The defendant's final conviction under W.Va.Code, 61–8D–5, was for a second occurrence in which he made the victim urinate into his mouth.

At trial, the State presented several witnesses who substantiated the victim's allegations. For example, Jean Fulton, the defendant's girlfriend, testified that she put the children to bed around 9:00 p.m. on June 10. Shortly thereafter, the defendant went upstairs, and Ms. Fulton overheard Laura yelling "Leave me alone." When Ms. Fulton went upstairs to see what was wrong, she observed the defendant holding the victim's wrists as the victim was crouched in the corner of the bedroom. Laura then told Ms. Fulton, "Terry said—if he didn't lick my pussy, he would kill my mom." The defendant told Ms. Fulton to go back downstairs, and then slapped Laura across the mouth.

Both Ms. Fulton and Paul Faulkenberry testified that shortly after Ms. Fulton came back downstairs, Laura ran down the steps and tried to leave the house. The defendant followed the victim and told Mr. Faulkenberry to grab her. Mr. Faulkenberry did, and the defendant took the victim back upstairs. Shortly thereafter, Ms. Fulton left the premises. Mr. Faulkenberry also stated that the defendant was alone with the victim for thirty to forty minutes the following morning.

The victim's mother testified that when she picked Laura up the following morning, Laura accused the defendant of sexually assaulting her. Moreover, the victim's mother observed that Laura had bruises on her legs.

Finally, Dr. Liela Hocking Keltner, a physician with the Child Abuse Response and Evaluation Service, testified that she examined Laura approximately three months after the incident. She testified that the physical exam corroborated Laura's accusation.

## II.

### MULTIPLE PUNISHMENTS

This is the first occasion we have had to address whether multiple punishments imposed after a single trial which resulted in convictions for the same acts under our sexual offenses statute, W.Va.Code, 61–8B–1, *et seq.*, and our sexual abuse statute relating to parents, custodians, or guardians, W.Va.Code, 61–8D–5, violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution or Article III, Section 5 of the West Virginia Constitution.

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb[.]" This clause affords three separate constitutional protections for the criminal defendant. These protections were first outlined

---

zarre. The mother testified that the defendant volunteered to raise Laura, and she wrote a note stating that he was Laura's guardian.

5. W.Va.Code, 61–8D–5, incorporates the sexual offenses defined in W.Va.Code, 61–8B–1, *et seq. See* note 3, *supra.*

by the United States Supreme Court in *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989):

"[The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted).

*See also Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989); *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

■ In *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977), we explained that the protections provided for in the Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution[6] were at least as coextensive as those in the Fifth Amendment. In Syllabus Point 1 of *Conner,* we summarized our Double Jeopardy principles:

"The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense."

*See also State v. Sayre,* 183 W.Va. 376, 395 S.E.2d 799 (1990); *State v. Fortner,* 182 W.Va. 345, 387 S.E.2d 812 (1989); *Keller v.*

*Ferguson,* 177 W.Va. 616, 355 S.E.2d 405 (1987); *State v. Collins,* 174 W.Va. 767, 329 S.E.2d 839 (1984); *State v. Myers,* 171 W.Va. 277, 298 S.E.2d 813 (1982).

The United States Supreme Court, in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), held that the Fifth Amendment constitutional guarantee against double jeopardy was binding on the states through the Fourteenth Amendment to the United States Constitution. *See also Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

This case involves the third component of the Double Jeopardy Clause, which protects against multiple punishments for the same offense. In *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983), the Supreme Court gave this summary: "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."

A more elaborate discussion on this point was made in *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 433 (1984):

"In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, ... the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent[.]"[7] (Citations omitted).

6. Article III, Section 5 of the West Virginia Constitution states, in part: "No person shall ... be twice put in jeopardy of life or liberty for the same offence."

7. The Supreme Court in *Johnson* touched on the point that the three double jeopardy protections are not designed for the same purposes and are,

therefore, not controlled by the same test. The Court stated one of its major concerns supporting a bar to retrial after an earlier conviction or acquittal:

"As we have explained on numerous occasions, the bar to retrial following acquittal or conviction ensures that the State does not

■ Traditionally, the United States Supreme Court has used the test first announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), as a rule of statutory construction to determine whether separate sentences were authorized:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Citation omitted).

■ However, recent decisions of the Court hold that the *Blockburger* test does not completely resolve the double jeopardy question when multiple punishments are involved. In *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715, 723–24 (1980), the Court acknowledged that *Blockburger* had been traditionally regarded as "a rule of statutory construction ... [based on] ... [t]he assumption underlying the rule ... that Congress ordinarily does not intend to punish the same offense under two different statutes." (Footnote omitted).

In *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275, 282 (1981), the Supreme Court stated that *Blockburger* would not control where Congress has clearly expressed a contrary legislative intent:

" 'The *Blockburger* test is a "rule of statutory construction," and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.' "

In *Missouri v. Hunter*, 459 U.S. at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 543–44, the Supreme Court, following the holdings in *Whalen* and *Albernaz*, again emphasized

make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence. *See, e.g., United States v. Wilson*, 420 U.S. 332, 343

that the *Blockburger* rule would not apply if there was a clear legislative intent indicating a contrary result:

"Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent."

Finally, in *Garrett v. United States*, 471 U.S. 773, 778–79, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985), the Court outlined the following procedure to determine whether two statutory provisions create one offense for double jeopardy purposes:

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense....

\*　\*　\*　\*　\*　\*

"... We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." (Citations omitted).

Thus, when the *Blockburger* analysis arrives at a result contrary to the "language, structure, and legislative history" of the statute, the *"Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of [the legislature]." *Garrett v. United States*, 471 U.S. at 779, 105 S.Ct. at 2412, 85 L.Ed.2d at 772.

■ We have recognized the foregoing principles and have applied them in our Double Jeopardy analysis. In Syllabus Point 8 of *State v. Zaccagnini*, 172 W.Va.

[95 S.Ct. 1013, 1021, 43 L.Ed.2d 232] (1975); *Green v. United States*, 355 U.S. 184, 187–188 [78 S.Ct. 221, 223–24, 2 L.Ed.2d 199] (1957)[.]" 467 U.S. at 498–99, 104 S.Ct. at 2540, 81 L.Ed.2d at 433.

491, 308 S.E.2d 131 (1983), we adopted the *Blockburger* rule:

"Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." [8]

We also noted that *Blockburger* established a rule of statutory construction that reflects legislative intent unless " 'there is a clear indication of contrary legislative intent.' " 172 W.Va. at 502, 308 S.E.2d at 142, *quoting Albernaz v. United States*, 450 U.S. at 340, 101 S.Ct. at 1143, 67 L.Ed.2d at 282.[9] (Citation omitted). Our cases which have cited Syllabus Point 8 of *Zaccagnini* have also involved double jeopardy claims based on multiple punishments arising from a single trial, as in the present case.[10]

■ Under the foregoing law, we hold that a claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment. In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the *Blockburger* test to determine whether each offense requires an element of proof that the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

■ Applying the law to the case at hand, we note that W.Va.Code, 61–8D–5(a), states, in part: "In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection[.]" Thus, the legislature has clearly and un-

---

**8.** Although not at issue here, the Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 520, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 563–64 (1990), *quoting Brown v. Ohio*, 432 U.S. 161, 166–67 n. 6, 97 S.Ct. 2221, 2226 n. 6, 53 L.Ed.2d 187, 195 n. 6 (1977), restated its double jeopardy law on claims of successive prosecutions:

"'The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.'" The Supreme Court then summarized this exception in *Grady:*

"Thus, a subsequent prosecution must do more than merely survive the *Blockburger* test. As we suggested in *[Illinois v.] Vitale [supra]*, the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an 'actual evidence' or 'same evidence' test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.... [A] State *cannot* avoid the dictates of the Double Jeopardy Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct." 495 U.S. at 521, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. (Footnote omitted; citation omitted).

**9.** Both the United States Supreme Court and this Court have recognized that double jeopardy can be violated where greater and lesser included offenses are involved. If proof of the greater offense includes all of the elements of the lesser offense, a conviction for one bars a conviction for the other. *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (conviction of felony-murder precludes conviction of underlying felony); *Brown v. Ohio, supra* (joy-riding conviction bars grand larceny conviction). We have adopted the Supreme Court's holding that conviction under a felony-murder statute bars conviction of the underlying felony. *See, e.g., State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991); *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983).

**10.** *See, e.g., State v. George*, 185 W.Va. 539, 408 S.E.2d 291 (1991); *State v. Sayre, supra; State v. Fortner, supra; State v. Collins, supra; State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983).

*Zaccagnini* concerned whether one found guilty of two counts of possession with intent to deliver two different drugs, i.e., LSD and cocaine, could be separately sentenced. We held he could be.

equivocally declared its intention that sexual abuse involving parents, custodians, or guardians, W.Va.Code, 61–8D–5, is a separate and distinct crime from general sexual offenses, W.Va.Code, 61–8B–1, *et seq.*, for purposes of punishment. Consequently, separate sentences for both crimes were permissible in a trial involving the same acts.[11]

### III.

### INSUFFICIENT EVIDENCE

The defendant further argues that there was insufficient evidence presented at trial to convict him of Counts 11 and 12 of the indictment. Count 11 charged that during the morning of June 11 the defendant touched the victim's sex organ with his hand in violation of W.Va.Code, 61–8B–7(a)(3). Count 12 charges the defendant with sexual abuse by a custodian in violation of W.Va.Code, 61–8D–5, based on the same alleged act.

■ In Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), we announced the standard to be used in determining whether or not sufficient evidence has been presented in a criminal prosecution:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

*See also State v. Tharp,* 184 W.Va. 292, 400 S.E.2d 300 (1990); *State v. Petrice,* 183 W.Va. 695, 398 S.E.2d 521 (1990); *State v. Merritt,* 183 W.Va. 601, 396 S.E.2d 871 (1990); *State v. Deskins,* 181 W.Va. 112, 380 S.E.2d 676 (1989); *State v. Chapman,* 178 W.Va. 678, 363 S.E.2d 755 (1987).

■ The only witness who testified about these acts was the victim. When the victim was asked what the defendant did to her on the morning of June 11, the victim denied that the defendant had touched her sex organ with his hand. Specifically, the following dialogue transpired at trial:

"Q Now, after that happened that night, did you go to sleep at some point?

"A Yeah, he came back up the next morning. He went down the stairs, and he came up the next morning, and then he did it to me again.

"Q Okay. Now, you are going to have to tell the jury again what he did to you. Okay?

"A Okay.

"Q The next morning.

"A He licked my bottom—my vagina part again and he—and he made me go to the bathroom in his mouth again.

11. The defendant asks us to reconsider our holding in *State v. Peyatt, supra.* In *Peyatt,* the defendant was convicted of incest, first-degree sexual assault, and third-degree sexual assault. He was sentenced for all three convictions, which were ordered to run concurrently. The defendant argued that multiple punishments under the incest statute and the sexual assault statute violated double jeopardy principles. After applying the *Blockburger* rule, we found that a conviction under the incest statute required sexual intrusion between prohibited relationships, but sexual assault did not. Likewise, sexual assault required lack of consent, while incest did not. We find nothing in today's analysis that would require a contrary result. The fact that the legislature did not make a statement as to its intent in the incest statute does not foreclose the *Blockburger* analysis.

We also note that the North Carolina Supreme Court in *State v. Raines,* 319 N.C. 258, 354 S.E.2d 486 (1987), upheld a conviction for the same act under its custodial sexual offense statute and its sexual offense statute as against a claim that convictions under both statutes violated double jeopardy. Unlike our statute, the North Carolina custodial sexual offense statute contained no express language as to legislative intent. The North Carolina court merely applied the *Blockburger* test. *See also State v. Hoover,* 89 N.C.App. 199, 365 S.E.2d 920, *cert. denied,* 323 N.C. 177, 373 S.E.2d 118 (1988).

"Q Okay. Did he touch your vagina part with anything other than his tongue on that next morning?

"A No."

The defendant also testified, and he denied all allegations of the indictment. No other evidence was introduced to establish that the defendant had committed the crimes alleged in companion Counts 11 and 12.

■■■ Under these circumstances, we find that the State's evidence was manifestly inadequate to establish the defendant's guilt. Because these crimes are separate from the others, we follow our past practice of remanding with instructions for the trial court to vacate these two convictions. *See, e.g., State v. Davis,* 182 W.Va. 482, 388 S.E.2d 508 (1989); *State v. Woodall,* 182 W.Va. 15, 385 S.E.2d 253 (1989); [12] *State v. Hanna,* 180 W.Va. 598, 378 S.E.2d 640 (1989); *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988).

For the foregoing reasons, the judgment of the Circuit Court of Wood County is affirmed, in part, and reversed, in part. The matter is remanded to the circuit court for further proceedings consistent with this opinion.[13]

Affirmed, in part, Reversed, in part, and Remanded.

---

12. As we stated in note 6 of *Woodall,* 182 W.Va. at 27, 385 S.E.2d at 265, when a conviction is overturned on appeal because of insufficient evidence, the State is foreclosed under double jeopardy principles from retrying the defendant on these charges. *See, e.g., Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979).

13. The defendant also raises several other assignments of error for the first time on appeal. Because they were not raised below, we decline to address them under the rule in Syllabus Point 17 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974):

"As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there."
*See, e.g., State v. McKinney,* 178 W.Va. 200, 358 S.E.2d 596 (1987); *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986); *Maxey v. Bordenkircher,* 175 W.Va. 49, 330 S.E.2d 859 (1985).