655 S.E.2d 110

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jonathon Freemont RAY, Defendant Below, Appellant.**

No. 33324.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2007.

Decided Nov. 8, 2007.

J.L. Hickok, Appellate Advocacy Division, Public Defender Services, Charleston, WV, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, William R. Valentino, Assistant Attorney General, Charleston, WV, for the Appellee.

BENJAMIN, Justice.

This action is before this Court upon the appeal of Jonathon Freemont Ray [hereinafter "Appellant"] from a May 26, 2006, re-sentencing order entered by the Circuit Court of Preston County, as the result of a jury verdict rendered on March 30, 2005, convicting the Appellant in Case No. 04–F–40 of five counts of first degree sexual assault, three counts of first degree sexual abuse, and five counts of incest; and two counts of sexual abuse by a parent, guardian or custodian in Case No. 04–F–71.[1] The Appellant was resentenced to consecutive terms of not less than fifteen nor more than thirty-five years for each of the five counts of first degree sexual assault, and terms of not less than one nor more than five years for each of the three counts of first degree sexu-

al abuse. He was also re-sentenced to terms of ten to twenty years for each count of sexual abuse by a parent, guardian or custodian, and terms of five to fifteen years for each of the counts of incest; however, these sentences were ordered concurrent to the sentences of sexual assault and abuse. The Appellant contends that the circuit court committed error by failing to dismiss the charges of incest. Specifically, he alleges that the conviction of incest cannot stand due to the lack of a consanguineous relationship between the Appellant and the victims, and that the principles of double jeopardy preclude the Appellant's convictions for both incest and first degree sexual assault. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the May 26, 2006, re-sentencing order of the Circuit Court of Preston County is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On February 26, 2003, the Appellant admitted, in a videotaped statement, that he had sexual contact with eight-year-old Logan S. and six-year-old Scotty S.,[2] his nephews by affinity through marriage.[3] The Appellant is the biological brother of George Ray, III, who, at all relevant times, was legally married to Crystal Ray. Crystal Ray is the biological mother of Logan S. and Scotty S, and George Ray, III, is their stepfather.

Following a complete investigation, the Appellant was indicted by the June 2004 Term

---

1. Two different indictments, indictment No. 04–F–40 and 04–F–71, were joined for trial.

2. Because this case involves children and sensitive facts, we follow our traditional practice and do not use the last name of the victims. *See State v. Roy*, 194 W.Va. 276, 460 S.E.2d 277 (1995).

3. This statement was obtained during an investigation which commenced in or around December 2003, when Trooper First Class C.W. DeBerry of the West Virginia State Police, Kingwood Detachment, received a referral for a sexual assault/abuse matter from the West Virginia Department of Health and Human Resources, identifying the Appellant as the accused. Trooper

DeBerry reviewed the referral and learned that the Appellant was arrested for exposing himself to a four year old male patient while volunteering at Ruby Memorial Hospital in Monongalia County, West Virginia. Appellant was interviewed by Morgantown City Police and he admitted having sexual contact with Logan S. while babysitting in Preston County. The Monongalia indictment number 03–F–47 charged the Appellant with one count of sexual abuse by a custodian, and one count of first degree sexual abuse. The Appellant pled guilty to first degree sexual abuse and was sentenced to an indeterminate term of one to five years. The charge of sexual abuse by a custodian was dismissed as part of the Appellant's plea bargain.

of the Grand Jury in Case No. 04–F–40 on sixteen felony counts,[4] including first degree sexual assault, first degree sexual abuse, and incest. Subsequently, the October 2004 Term of the Grand Jury returned a second indictment against the Appellant, Case No. 04–F–71, alleging three counts of first degree sexual assault; three counts of sexual abuse by a parent, guardian or custodian; and one count of first degree sexual abuse.

The State filed a Motion to Dismiss indictment 04–F–40 on November 8, 2004, but later withdrew the motion. On March 1, 2005, the Appellant filed a Motion to Dismiss indictment 04–F–71. By order of March 28, 2005, the circuit court dismissed Counts 1, 2, 3 and 7 of Case No. 04–F–71 and Count 5 of Case No. 04–F–40 and consolidated the indictments for trial.

During a jury trial on March 29 and 30, 2005, the Appellant moved for a judgment of acquittal on the counts of incest at the close of the State's case-in-chief, asserting that the conviction requires proof of a consanguineous relationship. The circuit court denied the Appellant's motion. The Appellant was convicted of five counts of first degree sexual assault as charged in counts 1, 2, 3, 4 and 6 in Case No. 04–F–40; three counts of first degree sexual abuse as charged in counts 8, 9 and 10 in Case No. 04–F–40; five counts of incest as charged in counts 11 through 15 in Case No. 04–F–40; and two counts of sexual abuse by a parent, guardian, or custodian as charged in counts 4 and 5 in Case No. 04–F–71.

Appellant filed a Motion for Judgment of Acquittal and/or New Trial on April 12, 2005, alleging various grounds for relief, which the circuit court denied. Appellant was sentenced on August 9, 2005 to a total term of not less than seventy-eight years nor more than one hundred ninety years. Appellant then filed, *pro se*, a Motion for Reduction of Sentence which was denied by the circuit court on September 1, 2005. Thereafter, on December 9, 2005, Appellant filed a second Motion for Reconsideration/Reduction of

Sentence, which the circuit court again denied. The parties then moved the circuit court to re-sentence the Appellant for the purpose of perfecting his appeal. A re-sentencing order was entered by the circuit court on May 26, 2006. It is from that order that Appellant now appeals.

## II.

### STANDARD OF REVIEW

■ There are two issues raised by the Appellant to be decided in the instant matter. The first is whether the Appellant may properly be convicted for the crime of incest pursuant to West Virginia Code § 61–8–12 (1994) where the alleged victims are the step-children of Appellant's biological brother. The second is whether a conviction for incest and sexual assault arising from the same act violates the double jeopardy provisions of the West Virginia Constitution. "Where the issue on appeal is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). We have also typically held that "a double jeopardy claim . . . [is] reviewed *de novo.*" Syl. Pt. 1, in part, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996). With these standards of review in mind, we now turn to the issues before us.

## III.

### DISCUSSION

The convictions at issue in this appeal are Counts 11 through 15 in Case No. 04–F–40. All such convictions are for the offense of incest pursuant to West Virginia Code § 61–8–12(1994). The Appellant presents one assignment of error, contending that the circuit court erred when it failed to dismiss the charges of incest. Specifically, he alleges that the conviction of incest cannot stand due to the lack of a consanguineous relationship between the Appellant and the victims, and that the principles of double jeopardy preclude the Appellant's convictions for both

---

**4.** In addition to his nephews, the Appellant was indicted regarding alleged sexual contact with two other children. The third victim, Elijah L., was unrelated by consanguinity or affinity to the Appellant and is not subject to this appeal. Evidence regarding the fourth alleged victim, Natalie R., was not adduced at trial, and thus, the Appellant was acquitted of those charges.

incest and first degree sexual assault. The State maintains that the circuit court did not commit error because the statutory construction of West Virginia Code § 61–8–12 has no requirement of consanguinity, and the Appellant's prosecution for incest and sexual assault arising from the same act does not violate the Double Jeopardy Clause. We affirm the ruling of the circuit court.

West Virginia Code § 61–8–12(b) states that "[a] person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her father, mother, brother, sister, daughter, son, grandfather, grandmother, grandson, granddaughter, nephew, niece, uncle or aunt [.]"[5] It further states that "[f]or the purposes of this section: ... (11) 'Nephew' means the son of a person's brother or sister; ... [and] (15) 'Son' means a person's natural son, adoptive son or the son of a person's husband or wife[.]" W.Va.Code § 61–8–12(a)(11) and (15).

We have long recognized that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968); *See also* Syl. Pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Memorial Hosp.,* 196 W.Va. 326, 472 S.E.2d 411 (1996) ("If the language of an enactment is clear and within the constitutional authority of the lawmaking body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery."); Syl. Pt. 1, *Sowa v. Huffman,* 191 W.Va. 105, 443 S.E.2d 262 (1994) (" 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' ").

In the instant case, it is undisputed that the first element of the offense, sexual intercourse or intrusion, was proven at trial. Thus, this appeal simply turns on the second element, whether the Appellant committed such an offense against a member of the statutorily protected class. Appellant contends that in order to demonstrate that the victims were members of the statutorily protected class, and thus, convict him of the crime of incest, consanguinity (a blood relationship between he and his victims) must be proven.

West Virginia Code § 61–8–12(b), however, does not expressly provide that consanguinity is an element of the offense. The statute only requires proof of sexual intercourse or intrusion with a statutorily protected person, as defined in that code section. According to the statutory definition, "nephew" means "the *son* of a person's brother or sister[.]" W. Va.Code § 61–8–12(11) (Emphasis added.) Furthermore, " '[s]on' means a person's natural son, adoptive son or the *son of a person's husband or wife[.]* " W. Va.Code § 61–8–12(15) (Emphasis added). The statutory definition of "son" therefore plainly and unambiguously includes three distinct classes of victims. The phrase "a person's natural son" includes blood relatives; the phrase "adoptive son" includes adoptive relatives; and the phrase "the son of a person's husband or wife" includes relatives by marriage. That the definition of "son" is clearly intended by West Virginia Code § 61–8–12(b) to include stepsons is beyond serious question. We decline to adopt any meaning for these terms contrary to their plain meanings.

Appellant further argues that the statute is ambiguous when applied to a stepchild, and does not fully and plainly inform persons such as the Appellant that his acts were criminally incestuous. We find this argument wholly without merit. This Court has held that "[i]n this jurisdiction a statute which undertakes to create a statutory offense, to be valid, must define or specify the acts necessary to constitute the offense with sufficient certainty to enable a person to know, when he does an act, whether it is forbidden by the statute." *State v. Harrison,* 130 W.Va. 246, 250–51, 43 S.E.2d 214, 218–19 (1947). "A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards

---

5. West Virginia Code § 61–8–12 is a statutory rather than common law prohibition.

for adjudication." Syl. Pt. 1, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974).

West Virginia Code § 61–8–12 specifies the acts necessary to constitute the offense and, by each statutory definition presented within that code section, identifies the precise classes of statutorily protected persons it intends to reach. Thus, West Virginia Code § 61–8–12 fully and adequately enables a person to know, when he or she commits an act, or contemplates doing so, whether such act is forbidden by statute. Accordingly, we find that West Virginia Code § 61–8–12 meets the requirements of the West Virginia Constitution, Article III, Section 14, mandating that "the accused be fully and plainly informed of the character and cause of the accusation."

▪ Here, the Appellant's biological brother was the victims' stepfather at the time of the act in question.[6] The victims, by statutory definition, are his "sons" because they are children of his wife. W.Va. Code § 61–8–12(15).[7] Likewise, the victims are the Appellant's "nephews" because they are the "sons" of his brother. W.Va. Code § 61–8–12.

The record before us reveals that the Appellant spent a great deal of time with these children, and the relationship between the Appellant and his nephews, like many stepfamily relationships, drew no distinction between blood and marriage. Each instance of sexual abuse occurred when the Appellant babysat these young members of his family. The children even referred to the Appellant as "Uncle John", and it is evident that the appellant assumed this role in their lives.

Our society is rapidly changing, and stepfamily relationships are an increasing aspect of this society. We believe that West Virginia Code § 61–8–12 acknowledges this evolution within our society, is intended to extend to such stepfamily relationships, and is not limited to crimes committed within the biological family. As such, our incest statute properly protects stepfamily members, especially during childhood. Accordingly, we hold that under West Virginia Code § 61–8–12(b), which does not require a showing of consanguinity, a person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with the step-child of his or her brother or sister. In the Appellant's case, the circuit court properly construed and applied this statute, and thus, we affirm its ruling in this regard.

We now turn to Appellant's second argument that the Double Jeopardy Clause of the West Virginia Constitution, Article III, Section 5, prohibits his prosecution for allegations of incest and sexual assault that arise from a single act.[8] Appellant maintains that our legislature has not explicitly permitted multiple prosecutions for each single offense. However, we find that these statutes are intended to permit multiple prosecutions for different offenses arising from a single act.

▪ Article III, Section 5 of the West Virginia Constitution states, in part: "No person shall ... be twice put in jeopardy of life or liberty for the same offence." In Syllabus Point 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977), we stated that "[t]he Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense."[9] The third

---

6. Under West Virginia Code § 61–8–12(4), the children's stepfather would be guilty of incest if he had committed the same acts as the Appellant. For purposes of West Virginia Code § 61–8–12(4), " 'father' means a person's natural father, adoptive father or the husband of a person's mother[.]"

7. Evidence of the marriage of a person to a stepchild's mother is sufficient to support a conviction for incest of the stepchild. *See Coleman v. Painter*, 215 W.Va. 592, 599, 600 S.E.2d 304, 311(2004).

8. Appellant only alleges a state double jeopardy violation under West Virginia Constitution, Article III, Section 5.

9. "The purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Syl. Pt. 3, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996).

form of protection afforded by the Double Jeopardy Clause, prohibition of multiple punishments, is the issue presented in this appeal.

In West Virginia, it is a well-settled rule that "[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syl. Pt. 7, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253. We analyze legislative intent by the test set forth in Syllabus Point 8 of *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253:

> In ascertaining legislative intent, a court should look initially at the language of the involved statutes, and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

Syl. Pt. 8, 187 W.Va. 136, 416 S.E.2d 253.

Under a *Blockburger* analysis, "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)." Syl. Pt. 4, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253. Once the determination is made that statutory offenses are separate under the *Blockburger* test by virtue of the fact that each provision requires proof of an additional fact which the other does not, then multiple punishments are appropriate. *State v. Zaccagnini,* 172 W.Va. 491, 502, 308 S.E.2d 131, 142.

In the case before us, neither our incest statute, West Virginia Code § 61–8–12, nor our first degree sexual assault statute, West Virginia Code § 61–8B–3 (2000), *explicitly* state whether the Legislature intended, or did not intend, to permit multiple sentences for multiple offenses arising from the same act. We must therefore apply the *Blockburger* test to determine the legislative intent on this issue. Doing so, we conclude that the Legislature clearly intended our incest statute and our first degree sexual assault statute to permit multiple sentences for different offenses arising from the same act.

In *State v. Peyatt,* 315 S.E.2d 574, 173 W.Va. 317 (1983), we analyzed the first degree sexual assault and incest statutes in effect at that time employing our adopted *Blockburger* analysis. There, we determined that convictions under these statutes required proof of different elements, and were, therefore, not the same offense under the *Blockburger* test. 173 W.Va. at 321, 315 S.E.2d at 578. We held that "separate convictions for first and third-degree sexual assault and incest, although they arise from the same act, do not constitute the same offense for purposes of the double jeopardy clauses." *Id.* Since our decision in *Peyatt,* our first degree sexual assault statute and incest statute have been amended. Thus, it is necessary to again apply the *Blockburger* test to our currently enacted first degree sexual assault and incest statutes to determine if they presently pass constitutional muster.

West Virginia Code § 61–8B–3(a) (2000) provides that "[a] person is guilty of sexual assault in the first degree when ... (2) The person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less and is not married to that person." In contrast, West Virginia Code § 61–8–12(b) states that "[a] person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her father, mother, brother, sister, daughter, son, grandfather, grandmother, grandson, granddaughter, nephew, niece, uncle or aunt [.]"

In analyzing the crime of first degree sexual assault herein, a conviction may

be obtained by first proving two different age-related elements, demonstrating that *a person, being fourteen years old or more*, engaged in sexual intercourse or intrusion with *another person who is eleven years old or less*. A third element, that the two are *not married*, must also be proven. In comparison, a conviction for incest must be achieved by proving a separate and additional fact, sexual intercourse or intrusion *between those of a proscribed relationship*. Thus, each statute requires proof of an additional fact which the other does not. Accordingly, we find that separate convictions for first degree sexual assault and incest, although they arise from the same act, do not constitute the same offense for purposes of the Double Jeopardy Clause of the West Virginia Constitution. Application herein of these statutes therefore do not violate double jeopardy.

## IV.

### CONCLUSION

For the foregoing reasons, the Circuit Court of Preston County did not err in refusing to dismiss the charges of incest. Accordingly, the May 26, 2006, order of the Circuit Court of Preston County is hereby affirmed.

**Affirmed.**

Justices STARCHER and ALBRIGHT concur and reserve the right to file concurring opinions.

ALBRIGHT, Justice, concurring:

I concur with the conclusion in the majority opinion that relationship by either consanguinity or affinity is sufficient to prove the necessary elements of the offense of incest under West Virginia Code § 61–8–12 (1994). I write separately to underscore the need for a legislative reexamination of our incest statutes.

West Virginia has heretofore adopted a series of sexual offense statutes punishing the same physical act of sexual aggression under two or more statutes that provide cumulative punishment for that same act. *See, e.g.,* W.Va.Code §§ 61–8B–1 *et al* (2000). This Court has approved such cumulative punishment where the second charged offense includes different elements and, in other cases, where the legislation expressly provides for cumulative punishment because of a particular relationship between victim and perpetrator. *See, e.g., State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983) (holding that convictions under first degree sexual assault and incest statutes require proof of different elements). I respectfully suggest that West Virginia's legislative scheme with respect to multiple punishments for the same physical act deserves careful review to assure that the result is both reasonable and appropriate in terms of public policy.

Illustrative of those states that have rewritten their respective sexual offense statutes to better define the offense of incest are the statutes enacted by Michigan, Minnesota, and New Jersey. In these states, if the minor victim is under the age of thirteen, there is no distinction in the offense based on the perpetrator's status as a relative or family member. *See* Mich. Comp. Laws § 750.520b (2003) (defining most serious sex offense in terms of requiring that victim is at least 13 but less than 16 and requiring perpetrator to be member of same household, or related to victim by blood or affinity to the fourth degree, holding position of authority over victim, or teacher or administrator); Minn.Stat. Ann. § 609.342 (2000); N.J. Stat. Ann. § 2C–14–2 (West 2004); *see* Leigh B. Bienen, *Defining Incest*, 92 NWU L Rev 1501, 1562–67 (1998). The New Jersey and Michigan statutes modernized the approach taken to incest by recognizing that the

> [r]elationship of the parties, or the existence of a marriage, is irrelevant to the definition of the offense if the child is under thirteen years old. For acts with children under age thirteen, there is no distinction in penalty or in the categorization of the harm, between sexual acts between father and daughter, for example, and sexual acts with an acquaintance or a stranger.

*Bienen, supra* at 1565. Another critical change in the more progressive approach to sexual offense statutes is to recognize that consenting sexual relations that transpire between close relatives where both individuals

are over the age of sixteen is no longer a crime. *Id.* Additionally, the modernized approach makes no distinction between homosexual and heterosexual acts and expands the definition of prohibited conduct. *Id.*

The need to replace traditional incest statutes with an expanded definition of sexual abuse was compelled by the circumstances being reported to social service agencies, hospitals, and therapists. Bienen, *supra,* at 1566. By recharacterizing what constituted child sexual abuse, and by including familial authority or relationship as a subcategory of the most serious sex offense, the modernized offense, rather than being inherently familial in nature, is structured more in terms of position of authority. *See, e.g.,* N.M. Stat. Ann. §§ 30–9–10E, 30–9–11 (Michie 1978) (including as persons within position of authority parent, relative, household member, teacher, employer, or other person able to exercise influence over child); Wyo. Stat. Ann. §§ 6–2–301(a)(iv), 6–4–402 (Michie 2007) (defining those in positions of authority as parent, guardian, relative, household member, teacher, employer, custodian, and any other person who by reason of position is able to exercise significant influence over person).

Given that the prohibition against incest was focused historically on the relationship aspect rather than the sexual act and was impelled by inbreeding and succession-related concerns, it is high time for our Legislature to reexamine our incest laws for the purpose of rewriting those laws to more accurately reflect the societal concerns at issue today: proscribed sexual conduct. By defining the acts of prohibited sexual conduct in terms of familial relationship, our penal laws do not fully address the realities of protecting the children of this state from unsolicited acts of sexual conduct. On the other hand, continuing to criminalize consensual sexual contact between adults whose only relationship is by way of affinity when that relationship has ceased to exist by reason of death or divorce borders on the ridiculous. Between these two extremes, varying situations and combinations of offenses clearly remain that deserve close legislative review to assure that specified punishments are just and that appropriate public policy concerns are being met.

I am authorized to state that Justice Starcher joins in this concurring opinion.