IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

No. 22-858

FILED

March 25, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

ANTHONY M.,
Defendant Below, Petitioner

Appeal from the Circuit Court of Kanawha County
The Honorable Maryclaire Akers, Judge
Case No. 21-F-383

AFFIRMED, IN PART; VACATED, IN PART; AND REMANDED WITH
INSTRUCTIONS

Submitted: January 15, 2025
Filed: March 25, 2025

Edward L. Bullman, Esq.
Bullman and Bullman
Charleston, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Andrea Nease Proper, Esq.
Deputy Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt."  Syllabus Point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

2.    "'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W. Va. 639, 643, 301 S.E.2d 596, 599 (1983)."  Syllabus Point 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983).

3.    "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution provides immunity from further prosecution where a court having jurisdiction has acquitted the accused.  It protects against a second prosecution for the same offense after conviction.  It also prohibits multiple punishments for the same offense."  Syllabus Point 1, *Conner v. Griffith*, 160 W. Va. 680, 238 S.E.2d 529 (1977).

4.     "In the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination."  Syllabus Point 1, *State v. Harlow*, 137 W. Va. 251, 71 S.E.2d 330 (1952).

5.     "Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury."  Syllabus Point 1, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977).

6.     "'Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.'  Syl. Pt. 5, *State v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975)."  Syllabus Point 6, *State v. Hoard*, 248 W. Va. 428, 889 S.E.2d 1 (2023).

7.     "In order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; (3) the opinion must be helpful in understanding the testimony or determining a fact in issue; and

(4) the opinion must not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Syllabus Point 1, *State v. Johnson*, 238 W. Va. 580, 797 S.E.2d 557 (2017).

8. "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus Point 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1971).

9. "'Events, declarations, and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered res gestae and are admissible at trial.' *State v. Ferguson*, 165 W.Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983)." Syllabus Point 7, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014).

WALKER, Justice:

Anthony M. was convicted of wanton endangerment, malicious assault and other charges related to a 2021 shooting of the mother of his children, Brittany S. On appeal, he challenges the sufficiency of the evidence to support his convictions, certain trial evidentiary rulings, and whether his conviction and sentence for both wanton endangerment and malicious assault violates double jeopardy. Only the double jeopardy challenge has merit. So, we affirm his convictions on all charges except for wanton endangerment (Count Eleven), find that he should have been convicted and sentenced only for malicious assault (Count Eight), and remand the case to the circuit court for resentencing in a manner consistent with this opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In November 2021, a Kanawha County Grand Jury returned a thirteen-count indictment charging Anthony M. with offenses related to two separate shootings of the same victim, Brittany S.—once in 2020 and again in 2021.[1] At the time of the shootings, Brittany S. and Anthony M. were in an "on and off" relationship. The two share four children together, including the infant K.M. Counts One through Six of the indictment related to the allegation that he shot Brittany S. at her home near Sissonville, West Virginia,

---

[1] We use initials in cases involving sensitive facts to protect the identities of those involved. *See* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

on November 2, 2020. These charges included two counts of gross child neglect creating a substantial risk of serious bodily injury or death, and one count each of the following offenses: malicious assault, use of a firearm during the commission of a felony, possession of a firearm by a prohibited person, and wanton endangerment.

Counts Seven through Thirteen of the indictment related to the allegation that Anthony M. had shot Brittany S. in the head while K.M. was strapped in a car seat nearby on October 29, 2021. These counts included the following offenses: attempted first-degree murder (Count Seven), malicious assault[2] (Count Eight), presentation of a firearm during the commission of a felony (Count Nine), possession of a firearm by a prohibited person (Count Ten),[3] wanton endangerment (Count Eleven), gross child neglect creating risk of serious bodily injury or death (Count Twelve), and an additional count of possession of a firearm by a prohibited person (Count Thirteen).[4] Count Eight of the indictment, charging malicious assault, specified that Brittany S. was the victim. But Count Eleven of the indictment, charging wanton endangerment, omitted the name of the victim.

---

[2] In the circuit court proceedings this count was referred to as "malicious wounding."

[3] This count related to Anthony M.'s possession of a firearm during the 2021 shooting.

[4] This count related to firearms found in Anthony M.'s residence during the execution of a search warrant in November 2021.

Anthony M.'s trial began on August 22, 2022.[5] The jury first heard testimony from Brittany S., who stated that she drove to a parking lot in October 2021 to meet up with Anthony M. because she "needed to get money." Although she brought K.M. with her, Brittany S. said she did not intend to leave K.M. with Anthony M. She explained that Anthony M. insisted that he take K.M. and shut her car off using her car key in order to prevent her from leaving with K.M. Brittany S. testified that after Anthony M. shut off her car, she "probably" "said something ugly" to Anthony M., like "I hate you" before handing K.M. to Anthony M. She explained that the next thing she remembered was waking up on the ground in her own blood while K.M. remained in her car seat outside of the vehicle. When the State asked Brittany S. what she told detectives at the hospital about who shot her, she responded "[p]robably Anthony. I don't remember." The State asked if she was lying when she told detectives that Anthony M. shot her, and she responded "no."[6]

Before Sylvia S., Brittany S.'s mother, testified, the State explained, out of the presence of the jury, that Sylvia's S.'s anticipated testimony would include a statement

---

[5] As noted below, Anthony M. was ultimately acquitted of the charges related to the 2020 shooting. So, we limit our recitation of the facts to those relevant to the 2021 shooting and our analysis of Anthony M.'s assignments of error.

[6] During the State's direct examination, it attempted to elicit testimony from Brittany S. about the 2020 shooting. After rebuffing the State's questions because she was "there to talk about what happened in 2021," she finally explained that in November 2020, Anthony M. shot her in her home in front of two of her children. On cross-examination, she conceded that at the time of the 2020 shooting, she told detectives a random intruder had shot her, and not Anthony M.

made by Brittany S. to Sylvia S. that Anthony M. had threatened to kill her and two of the children. The State proffered that the statement was not offered for the truth of the matter asserted, but rather, to establish the basis for Sylvia S.'s lay opinion that Anthony M. had shot Brittany S. under Rule 701 of the West Virginia Rules of Evidence. Anthony M. argued that the statement was not only improper hearsay testimony, but also offered as improper propensity evidence under Rule 404(b) of the West Virginia Rules of Evidence. The circuit court allowed the testimony, over Anthony M.'s objection, although the court noted that there were "a number of ways where [the State] may run afoul" of Rule 701, and that it would stop the testimony if that occurred. Sylvia S. then testified that four to six months before the 2020 shooting, Brittany S. called her crying because Anthony M. had a gun and threatened to shoot both Brittany S. and the children unless they got out of his house. Then, Sylvia S. continued, after the 2021 shooting, the police contacted her and asked her if she had an opinion about who may have shot Brittany S., who, to Sylvia S.'s knowledge, had not named anyone as a suspect. Sylvia S. recounted that she shared with police her opinion that Anthony M. shot Brittany S. She explained that the phone call preceding the alleged 2020 shooting formed the basis for her opinion that Anthony M. had shot her daughter in 2020 and again in 2021.[7]

---

[7] Sylvia S.'s testimony on this phone call drew continued objections from Anthony M., but the circuit court allowed the testimony because Anthony M. had been charged with crimes related to the 2020 shooting.

Patrolman Christy, who responded to the 2021 shooting, testified that at the time he arrived at the scene to investigate, Brittany S. was lying on the ground with a spent shell casing beside her head. He testified that he found K.M. next to the car about five feet away from Brittany S.'s feet, and that the windshield of Brittany S.'s vehicle was cracked, with fragments inside of the vehicle from where the bullet likely ricocheted after hitting Brittany S. Detective Jeremy Thompson, who also responded, testified that he collected Brittany S.'s cellphone at the scene and obtained her consent to search the phone. As a result of that search, he discovered multiple messages between Anthony M. and Brittany S. confirming that he had shot her in the past, and a subsequent message sent from Anthony M. to Brittany S. on the day of the shooting stating: "[y]ou know what, your [sic] right . . . I'm killing both of y'all nobody is to touch you other than me period."

Detective John Keeney, who also responded to the 2021 shooting, testified that he had received cell-signal information about where Anthony M. may have been staying. He stated that the detectives obtained a search warrant for Anthony M.'s residence on Crestmont Avenue in Charleston, West Virginia, and found him exiting a bedroom on the left side of the home. The detective explained that inside of that room, he found multiple firearms, including a Taurus PT111 G2 firearm matching the spent shell casing found at the scene. In this same room, the detectives also discovered Anthony M.'s West Virginia vehicle title and a receipt from the Walmart Eyesight and Vision Center listing his name and the Crestmont Avenue address.

A forensic examiner with the West Virginia State Police Forensic Laboratory testified that the recovered Taurus model PT111 G2 pistol worked properly during test-firing. He then opined that although the results were ultimately inconclusive, the nine-millimeter Luger bullet case found at the scene of the crime was fired from the pistol because it shared characteristics with the test-fired bullet—including six land-and-groove impressions, among other distortions and abrasions.

A geolocation specialist with the City of South Charleston Detective Bureau who examined Brittany S.'s and Anthony M.'s cell phones after the 2021 shooting testified that information from cellular signals placed Brittany S.'s cell phone at the scene of the shooting. The State also asked if he had "an expert opinion about whether the cellphone on the account associated with [Anthony M.] was at the scene of the shooting at or near the time the shot was fired[,]" and the geolocation specialist opined that the cellphone was at or near the scene of the crime.

The Kanawha County Sheriff's Office Victim Services Coordinator testified that domestic violence survivors are often reluctant to identify their abusers or testify against them in court, and that victims frequently have a difficult time leaving their abuser. She explained that Brittany S.'s behavior of refusing to identify Anthony M. after the 2020 shooting, maintaining a relationship with him, and being reluctant to testify against him at trial was consistent with the behavior of other trauma or domestic abuse survivors.

The State also called Captain Andrew Gordon, the lead detective in the investigation. During his direct examination, the State asked Captain Gordon the following question: "When you took [Anthony M.] into custody, did [Anthony M.] give his version of events?" Captain Gordon answered: "He did not." Anthony M. objected and the circuit court immediately sent the jury out of the room. Anthony M. then moved for a mistrial, arguing that the State effectively commented on his right to remain silent by asking the detective about whether Anthony M. had given a statement after he had been read—but did not waive-his *Miranda* rights.[8] After hearing arguments, the court ultimately determined that because "the question was objected to and not allowed to go further," any resulting error was harmless.

After the State concluded its case-in-chief, both parties rested and the circuit court instructed the jury. As to the malicious assault charge associated with the 2021 shooting (Count Eight), the jury was instructed as follows:

> Before the defendant, [Anthony M.], can be convicted of malicious wounding, the State of West Virginia must overcome the presumption that the defendant, [Anthony M.], is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:
>
> 1. The defendant, [Anthony M.],
> 2. In Kanawha County, West Virginia,
> 3. On or about the 29th day of October 2021,

---

[8] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

4. Did unlawfully and maliciously cut, stab, wound, shoot or other—by other means cause bodily injury to
5. [Brittany S.]
6. With the intent to maim, disfigure, disable, or kill,
7. [Brittany S.]

As to the wanton endangerment with a firearm charge related to the 2021 shooting (Count Eleven), the jury was given this instruction:

Before the defendant, [Anthony M.], can be convicted of wanton endangerment, the State of West Virginia must overcome the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:

1. The defendant, [Anthony M.],
2. On or about the 29th day of October 2021,
3. In Kanawha County, West Virginia,
4. Wantonly,
5. Perform an act,
6. With a firearm,
7. Which act created a substantial risk of death or serious bodily injury,
8. To another person.

After deliberation, the jury acquitted Anthony M. on all of the charges related to the 2020 shooting and found Anthony M. guilty of all offenses related to the 2021 shooting.

Anthony M. filed several post-trial motions, including a motion for judgment of acquittal under Rule 29(c) of the West Virginia Rules of Criminal Procedure, arguing

that the State failed to establish two separate offenses of wanton endangerment and malicious assault. He also moved for a new trial under Rule 33 of the Rules of Criminal Procedure, arguing a violation of the prohibition against double jeopardy, that the circuit court erred in refusing to grant a mistrial after his right against self-incrimination was violated, and that the lay opinion testimony of Sylvia S. was improper hearsay. The court denied these motions, and on October 24, 2022, Anthony M. was sentenced as follows: not less than three nor more than fifteen years in prison for attempted first-degree murder (Count Seven), not less than two nor more than ten years for malicious assault (Count Eight), ten years for presentation of a firearm during the commission of a felony (Count Nine), five years for possession of a firearm by a prohibited person (Count Ten), five years for wanton endangerment (Count Eleven), not less than one nor more than five years for gross child neglect creating substantial risk of serious bodily injury or death (Count Twelve), and five years for possession of a firearm by a prohibited person (Count Thirteen). Anthony M. appeals from that order.

## II.    STANDARD OF REVIEW

Anthony M.'s argument that his convictions for both wanton endangerment and malicious assault violate the double jeopardy clause of the West Virginia Constitution is afforded plenary review as a question of law: "[A] double jeopardy claim…[is] reviewed de novo." We review Anthony M.'s arguments that the State failed to present sufficient evidence to support his convictions under the following standard:

9

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[9]

Anthony M.'s contention that the circuit court erred in not granting his motion for a mistrial is subject to a deferential standard of review: "We review the denial of a motion for a mistrial for an abuse of discretion."[10] Finally, when reviewing a challenge to a trial court's admission of evidence, we also apply a deferential standard of review: "'[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W. Va. 639, 643, 301 S.E.2d 596, 599 (1983)."[11]

With these standards in mind, we proceed to the merits of this appeal.

---

[9] Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

[10] *State v. Sheffield*, 247 W. Va. 183, 189, 875 S.E.2d 321, 327 (2022).

[11] Syl. Pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983).

## III.    ANALYSIS

On appeal, Anthony M. raises six assignments of error to this Court. He first asserts that his convictions for both malicious assault and wanton endangerment, as alleged in Counts Eight and Eleven of the indictment, violated constitutional protections against double jeopardy. Three of his assignments of error relate to the sufficiency of the evidence to support his convictions. Finally, he assigns error to the circuit court's failure to grant a mistrial after the State violated his right to remain silent and to the court's decision to allow Brittany S.'s mother to testify.

### A.    Double Jeopardy

We begin by addressing Anthony M.'s argument that his conviction and sentence for both malicious assault (Count Eight) and wanton endangerment involving a firearm (Count Eleven) violated his constitutional protection against double jeopardy.[12] The charge of malicious assault specifically identified Brittany S. as the victim. The charge of wanton endangerment, however, failed to identify a victim, alleging, instead, that Anthony M. wantonly performed an act with a firearm that created a substantial risk of death or serious bodily injury "to another person." He contends that because he fired one shot at Brittany S. during the 2021 shooting, the charge of wanton endangerment under

---

[12] While Anthony M.'s assignment of error broadly references both the state and federal constitution, the substance of his argument appears solely grounded in protections under the West Virginia Constitution.

11

West Virginia Code § 61-7-12 (1994)[13] is a lesser-included offense of the charge of malicious assault under West Virginia Code § 61-2-9(a) (2017).[14] The State responds that the facts of the present case do not give rise to a double jeopardy violation because Count Eleven of the indictment (charging wanton endangerment) failed to identify a victim, the jury could have found that each offense had a different victim. In other words, the jury properly convicted Anthony M. of wanton endangerment as against K.M. because the evidence supported a finding that, by shooting at Brittany S. while K.M. was lying nearby in a car seat, Anthony M. created a substantial risk of death or serious bodily injury to K.M. Thus, according to the State, the convictions for both malicious assault and wanton

---

[13] West Virginia Code § 61-7-12 outlines the offense of wanton endangerment involving a firearm. That statute, in part, states the following:

> Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both.

[14] The offense of malicious . . . assault is codified in West Virginia Code § 61-2-9. Subsection (a), in relevant part, of that statute provides the following:

> (a) If any person maliciously shoots, stabs, cuts or wounds any person, or by any means cause him or her bodily injury with intent to maim, disfigure, disable or kill, he or she, except where it is otherwise provided, is guilty of a felony and, upon conviction thereof, shall be punished by confinement in a state correctional facility not less than two nor more than ten years.

12

endangerment did not violate Anthony M.'s protections against double jeopardy because his conviction for malicious assault was as to the victim Brittany S., and sufficient evidence supported his conviction for wanton endangerment as to K.M.

As we have explained, the Double Jeopardy Clause found in article III, section 5 of the West Virginia Constitution encompasses three protections:

> The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.[15]

Here, Anthony M.'s challenge is based on the prohibition against multiple punishments for the same offense.

In *State v. Gill*,[16] this Court recounted the test set forth by the Supreme Court of the United States in *Blockburger v. United States*,[17] and concluded that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one,

---

[15] Syl. Pt. 1, *Conner v. Griffith*, 160 W. Va. 680, 238 S.E.2d 529 (1977).

[16] 187 W. Va. 136, 416 S.E.2d 253 (1992).

[17] 284 U.S. 299, 52 S. Ct. 180, 76 L.Ed. 309 (1932).

13

is whether each provision requires proof of a fact which the other does not."[18]  We noted in *Gill* that "[b]oth the United States Supreme Court and this Court have recognized that double jeopardy can be violated where greater and lesser included offenses are involved. If proof of the greater offense includes all of the elements of the lesser offense, a conviction for one bars a conviction for the other."[19]

Anthony M. contends that in *State v. Wright*,[20] this Court applied the analysis from *Gill* to the wanton endangerment and malicious assault statutes after Mr. Wright was charged with both offenses for shooting and wounding an acquaintance.[21]  We observed there that convictions for wanton endangerment and malicious assault do not *always* constitute a double jeopardy violation since wanton endangerment with a firearm under West Virginia Code § 61-7-12 requires proof of an additional element—the use of a firearm—that malicious assault does not necessarily require.[22]  But we concluded that under the underlying facts of that case, convictions for both offenses violated Mr. Wright's

---

[18] *Id.* (quoting *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182, 76 L.Ed. at 309).  As a rule of statutory construction, however, we note that the "*Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of [the legislature]."  *Gill*, 187 W. Va. at 142, 416 S.E.2d at 259 (quoting *Garrett v. United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 2412, 85 L.Ed.2d 764, 772 (1985)).

[19] *Gill*, 187 W. Va. at 143 n.9, 416 S.E.2d at 260 n.9 (citations omitted).

[20] 200 W. Va. 549, 490 S.E.2d 636 (1997).

[21] *Id.* at 549, 553, 490 S.E.2d at 640.

[22] *Id.*

14

constitutional protections against double jeopardy because both convictions hinged on a single act involving a single gunshot.[23]

> In this case, the elements of wanton endangerment include: (1) the defendant (2) did wantonly perform (3) with a firearm (4) an act (5) creating substantial risk of (6) death or serious bodily injury to another. And in this case, the elements of malicious assault include: (1) the defendant (2) maliciously (3) shot with a firearm [statute says "shoot, stab, cut or wound"] (4) causing bodily harm to the victim (5) with intent to main, disfigure, disable or kill.[24]

Given those circumstances, we found that "it would have been impossible for Mr. Wright to commit malicious assault with a single gunshot without committing wanton endangerment with a firearm."[25]  And as "[t]he test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense,"[26] under the facts presented in *Wright*, we found that wanton endangerment was a lesser included offense of malicious assault and that Mr. Wright's conviction and sentence should have been limited to either malicious assault or wanton endangerment.[27]

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 553, 490 S.E.2d at 640.

[26] *Id.* (quoting Syl. Pt. 1, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982)).

[27] *Wright*, 200 W. Va. at 554, 490 S.E.2d at 641.

Anthony M. argues that here, like in *Wright*, his convictions hinged on one single act involving one single gunshot. The State responds that the facts of this case are distinguishable from those in *Wright* because in that case, there was only one victim at the scene of the shooting. But here, the State maintains that the crimes at issue involve two separate victims: Brittany S. and K.M. The State analogizes the facts of this case to those in *Mirandy v. Smith*.[28] In *Mirandy*, the criminal defendant, Mr. Smith, discharged the shotgun into the adult victim's leg while the adult victim's son was present.[29] Among other charges, Mr. Smith was indicted on one count of wanton endangerment involving a firearm and one count of malicious assault.[30] The charging document specifically indicated that the victim of the wanton endangerment count was the minor child, and that the victim of the malicious assault count was the adult.[31] Although Mr. Smith was found guilty on both counts, the habeas court determined that convictions on both counts based on a single gunshot violated Mr. Smith's constitutional protections against double jeopardy.[32] On the State's appeal of the circuit court's final order granting habeas relief, we applied the *Blockburger* test as articulated in *Gill* and determined that convictions and sentencing on both offenses did not offend double jeopardy principles because Mr. Smith's conviction for

---

[28] 237 W. Va. 363, 787 S.E.2d 634.

[29] *Id*. at 365, 787 S.E.2d at 636.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 366, 787 S.E.2d at 637.

16

malicious assault required proof that the victim was the adult, and his conviction for wanton endangerment required proof that the victim was the minor child.[33]  Thus, because the conviction on the malicious assault count required proving a fact that conviction on the wanton endangerment count did not, and because the conviction on the wanton endangerment count required proving a fact that conviction on the malicious assault count did not (i.e. the two separate victims, as identified in the indictment) there was no double jeopardy violation.[34]

We are not persuaded by the State's assertion that the underlying facts are akin to those in *Mirandy* simply because there were two potential victims—Brittany S. and K.M.—of the 2021 shooting.  We acknowledge that in *Mirandy* we found no double jeopardy violation where conviction on each offense—wanton endangerment and malicious wounding—required proof of an element that the other did not.  But here, unlike there, while the indictment specified that Brittany S. was the victim for the malicious assault charge, the indictment was silent as to whether Brittany S. or K.M. was the intended victim as to the wanton endangerment charge.  Despite the charging document's failure to indicate that K.M. was the victim of the wanton endangerment charge, the State asks this Court to nevertheless affirm the conviction arguing that "[w]hile there is no dispute that the charges of  . . . malicious wounding refer to [Anthony M.] shooting [Brittany S.] in the

---

[33] *Id*. at 367, 787 S.E.2d at 638.

[34] *Id*.

17

head with a 9mm handgun, the evidence also clearly demonstrates that the same conduct substantially endangered his infant daughter who was 'in the car seat carrier next to' Brittany S. at the time [Anthony M.] attempted to kill her."

This argument fails to acknowledge a record lacking *any* indication that the State argued Anthony M.'s guilt on the wanton endangerment charge referring to K.M. In asking this Court to assume that the jury intended its conviction on the wanton endangerment count to refer to K.M., the State asks this Court to make an assumption— that the case was argued to support those charges—that the prosecution itself was unwilling to make when defending the conviction during posttrial motions.[35] Moreover, *no* other portion of the record *sufficiently* makes clear that the charged conduct refers to Anthony M. endangering K.M. in when he shot Brittany S. in 2021.

The United States Court of Appeals for the Fourth Circuit considered similar facts in the context of the sufficiency of an indictment in the per curium opinion *U.S. v.*

---

[35] Among other post-trial motions, Anthony M. moved the circuit court for a partial judgment of acquittal on the wanton endangerment and malicious assault counts—asserting the same double jeopardy grounds he asserts here. The circuit court explicitly asked the State whether it argued the case to support a conviction on the wanton endangerment charge referring to K.M., rather than referring to Brittany S. as the victim, and the State responded, in part, "I don't recall." The court then asked counsel for Anthony M. whether, in his opinion, Anthony M.'s guilt on the wanton endangerment charge was argued in such a way that K.M. was the intended victim, and he replied "I -- I can't honestly say how [the State] argued [its] case. I don't recall. I'd have to look at the transcript. But, again, my impression was it was shooting at [Brittany S.] and that was the basis of both these counts."

18

*Mendez-Colon*.[36]  In that case, Mr. Mendez-Colon and a codefendant were indicted on, and convicted for, two charges related to the assault of two other inmates at a federal correctional institution.[37]  On appeal, Mr. Mendez-Colon argued that neither count of the indictment named a specific victim, so "it [was] unclear as to which count is for which victim or if both counts are for both victims."[38]  The court found that "the indictment alleged the elements of the offense and, by identifying the date and location of the assault, did so with sufficient specificity to put [the defendant] on notice as to the conduct at issue."[39]  So, the court concluded, because "the record [made] it clear that the charged conduct related to the assaults of the two inmates and specif[ied] the count relating to each inmate,"[40] the Fourth Circuit upheld the convictions.[41]

---

[36] *United States v. Mendez-Colon*, 417 Fed. Appx 320 (4th Cir. 2011).

[37] *Id*. at *321.

[38] *Id.*

[39] *Id*. at *321-322.

[40] *Id*.

[41] *Id.  Cf. State v. Smith,* No. W201901227CCAR3CD, 2020 WL 3542240, at *10-11 (Tenn. Crim. App. June 30, 2020) (holding that an indictment was sufficient despite failure to name a victim when the language of the indictment specified the day on which the shooting happened and referenced surveillance video that differentiated the victims based on the clothing that they were wearing at the time of the shooting, allowing the defendants to adequately identify the victims and mount a defense against a second prosecution for the same offenses.)

19

It is undisputed that the indictment in this case did not name K.M. as the intended victim for the wanton endangerment charge. And we are not convinced by our review of the record as a whole that the charged conduct related to any danger Anthony M. placed K.M. in when he shot Brittany S.[42] Because it is not apparent from the record that

---

[42] We note that, generally, criminal defendants are permitted to rely on the record as a whole to mount a challenge to future prosecutions on former jeopardy grounds. Thus, the record of the proceedings under an indictment can act as a backstop to an otherwise insufficient indictment. *See* 21 Am. Jur. 2d Criminal Law § 583 ("The record of proceedings under a former indictment is competent evidence tending to show a former conviction or acquittal for purposes of a former jeopardy claim in a criminal case. . . . The defendant, however, need not rely on the indictment alone to protect the defendant from future prosecutions on former jeopardy grounds; the defendant may allege and prove facts outside of the indictment or information[.]").

Considering the criteria for measuring the constitutional sufficiency of an indictment in *Russell v. United States*, 369 U.S. 749 (1962), the Supreme Court also stressed the importance of the record as a whole as a backstop to future double jeopardy violations:

> it can hardly be doubted that the petitioners would be fully rotected [sic] from again being put in jeopardy for the same offense, *particularly when it is remembered that they could rely upon other parts of the present record in the event that future proceedings should be taken against them*.

*Id*. at 764. (emphasis added) (internal citations omitted).

Similarly in *Cochran v. United* States, 157 U.S. 286 (1895), the United States Supreme Court, considering a challenge to an indictment under a banking provision, also noted the importance of a defendant's ability to rely on the record to plead former acquittal or conviction for purposes of a former jeopardy claim:

> Few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel,—few which might not be made more definite by additional allegations. But the true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and

20

the State made a case for wanton endangerment as to K.M., we cannot subscribe to its argument, on appeal, that there is no double jeopardy violation in this case simply because two victims were present at the time of the shooting. And because convictions for both wanton endangerment and malicious assault as to one singular victim, Brittany S., would violate Anthony M.'s constitutional protections against double jeopardy under *Wright*, we conclude that it was error for the circuit court to allow Anthony M. to be convicted and sentenced to both. Instead, Anthony M.'s sentence should have been limited to malicious assault.[43] On remand, the circuit court is directed to resentence Anthony M. in a manner consistent with this opinion.

## B. Sufficiency of the Evidence

---

> sufficiently apprises the defendant of what he must be prepared to meet, and, *in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.*

*Id*. at 290. (emphasis added) (internal citations omitted)). Problematically, the record here is insufficient for Anthony M. to mount a challenge to future jeopardy he may be placed in relative to the wanton endangerment charge prosecuted here.

[43] *Cf. State v. Ward*, 250 W. Va. 541, 906 S.E.2d 194, 209, *cert. denied sub nom. Ward v. West Virginia*, 144 S. Ct. 409, 217 L. Ed. 2d 220 (2023) ("Much like in the Wright case, it would have been impossible for Petitioner to have committed malicious assault on a law enforcement officer without first committing wanton endangerment of Deputy Pierson with a firearm. For this reason, we find that, given the circumstances of this case, wanton endangerment (of Deputy Pierson) is a lesser included offense of malicious assault on a law enforcement officer. Based on this holding, we find that the circuit court erred in convicting and sentencing Petitioner for both wanton endangerment of Deputy Pierson and malicious assault on a law enforcement officer.").

Anthony M. makes several arguments based on the insufficiency of the evidence. First, he challenges the sufficiency of the evidence to support his conviction for possession of a firearm by a prohibited person (Count Thirteen), related to the firearms found in the Crestmont Avenue residence during execution of the search warrant after the 2021 shooting—including the firearm used during the 2021 shooting. Anthony M. asserts that the State failed to prove that he "exercised dominion and control" over any of the weapons discovered during that search because "[o]thers had access to the apartment and the room where the weapons were found."[44] The State responds that the evidence presented at trial directly linked Anthony M. to the firearm used during the 2021 shooting and sufficiently proved he had constructive possession of the remaining firearms.

This Court has previously discussed the general principle of constructive possession for various items of contraband. As to controlled substances, we held in *State v. Cummings* that actual or constructive possession of chemicals and/or equipment used for manufacturing methamphetamine must be proved to sustain a conviction for operating a clandestine drug lab.[45] We articulated a two-part test for establishing constructive possession where a defendant is present in a vehicle with chemicals and/or equipment,

---

[44] Because the parties stipulated that Anthony M. is a person prohibited from possessing a firearm, this challenge is only as to the sufficiency of the evidence to support the element of possession.

[45] 220 W. Va. 433, 647 S.E.2d 869 (2001).

22

which requires that the State prove (1) that the defendant had knowledge of the items and (2) that the items were subject to his dominion and control.[46]

In *State v. Beck*,[47] we applied the same constructive possession analysis when considering whether images of minors engaged in sexually explicit conduct found in cached files on a defendant's computer satisfied the possession element in a prosecution for a violation of West Virginia Code § 61-8C-3(a) (2014) (generally, possession of child pornography).[48] We concluded that the State could prove that the defendant exercised constructive possession of the items beyond a reasonable doubt if it presented evidence that the defendant knew of the images and exercised dominion and control over them.[49]

Finally, in our recent memorandum decision in *State v. Warren*,[50] we considered a petitioner's challenge to the sufficiency of the evidence to support his conviction for possession of a firearm by a prohibited person where the firearms in question were found in a hotel room the petitioner shared with another. There, the State offered testimony that the defendant, a person prohibited from purchasing firearms, had engaged a

---

[46] *Id*. at 439, 647 S.E.2d at 875.

[47] 241 W. Va. 759, 828 S.E.2d 821 (2019).

[48] *Id*. at 823, 828 S.E.2d at 761.

[49] *Id*. at 827, 828 S.E.2d at 765.

[50] No. 22-0369, 2023 WL 6862167 (W. Va. Oct. 18, 2023) (memorandum decision).

23

State's witness to purchase firearms for resale. Multiple firearms were then seized from the shared hotel room, and we found it "apparent that Mr. Warren exercised control over firearms."[51]

Applying the above to the facts here, we conclude that the evidence presented to the jury was "sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt" that Anthony M. knew of and exercised control over the firearms. We have long held that one who challenges the sufficiency of the evidence to support a conviction "takes on a very heavy burden."[52] While executing the search warrant at the Crestmont Avenue residence following the 2021 shooting, officers observed Anthony M. exiting the bedroom within which the Taurus model PT111 G2 firearm (and others) were found. The officers also found documents listing Anthony M.'s name and the Crestmont Avenue address inside the bedroom he was seen exiting. The firearm recovered was, in the opinion of the forensic examiner, the same one that fired the spent shell casing found near Brittany S. after the 2021 shooting. And Brittany S. testified that Anthony M. was the only other adult at the scene of the 2021 shooting. Moreover, Anthony M.'s cell phone was traced to the location of the shooting, and the evidence showed that he sent threatening texts to Brittany S. admitting to having previously shot her. Anthony M.—in view of the evidence recounted above—has not met the very heavy burden of showing that there was

---

[51] *Id.*

[52] *Guthrie*, 194 W. Va. at 657, 561 S.E.2d at 163, Syl. Pt. 3, in part.

24

insufficient evidence that he exercised control over the firearms simply because he may have shared the residence with a roommate.

Anthony M. next contends that there was a lack of evidence that he fired the weapon involved in the 2021 shooting, and so there was insufficient evidence to support his remaining convictions. Anthony M. raises this issue as the sole basis for his challenge to the sufficiency of the evidence supporting these convictions, and he asserts that Brittany S. never testified that he possessed a weapon and that the State failed to offer a motive for the shooting. The State responds this "scant argument" "neglects the overwhelming evidence presented proving his guilt."

We first note that while "[m]otive may be an indicator of premeditation" for a crime, it is not an essential element of any of the crimes charged in the indictment, and "need not be proven in order to sustain a conviction."[53] Thus, whether the State proved motive is irrelevant to whether sufficient evidence existed to support the remaining convictions associated with the 2021 shooting. Otherwise, the State presented sufficient evidence at trial to convince a reasonable juror that Anthony M. fired the weapon involved in the 2021 shooting. Again, Brittany S. testified he was the only other adult present before she woke up on the ground and discovered that she had been shot, and she admitted that she told the officers at the hospital directly after the shooting that Anthony M. had shot her.

---

[53] *State v. Zuccaro*, 239 W. Va. 128, 146, 799 S.E.2d 559, 577 (2017).

25

Consistent with Brittany S.'s reluctance to identify Anthony M. as the shooter during trial, the Victim Services Coordinator with the Kanawha County Sheriff's Department testified that survivors of domestic violence are often loath to identify their abusers or testify against them in court. And, a firearm over which Anthony M. exercised control matched the spent bullet casing retrieved from the scene of the shooting, and evidence placed his cell phone at or near the location of the 2021 shooting.

We have consistently held that "[i]n the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination."[54] Therefore, this Court will not overturn a verdict unless "reasonable minds could not have reached the same conclusion."[55] Here, despite Brittany S.'s reluctance to name Anthony M., the jury was still presented with sufficient evidence and testimony to support its conclusion that he was the person who shot Brittany S. in October 2021. Assigning weight to the remainder of Brittany S.'s testimony and credibility to the testimony of the detectives was wholly within the province of the jury. And because we cannot conclude that reasonable minds could not have made the same determination, this Court will not overturn the convictions on this basis.

---

[54] Syl. Pt. 1, *State v. Harlow*, 137 W. Va. 251, 71 S.E.2d 330 (1952).

[55] *Guthrie*, 194 W. Va. at 669, 461 S.E.2d at 175.

In his final challenge to the sufficiency of the evidence, Anthony M. asserts that the evidence was insufficient for a reasonable jury to convict him of child neglect under West Virginia Code § 61-8D-4(c) (2014) because it failed to prove that he put K.M. at a substantial risk of death or serious bodily injury during the 2021 shooting. The State counters that Anthony M. "discounts the fact that [K.M.], who was less than a year old, was endangered by her father shooting her mother within mere feet of her" and that he "left [K.M.] alone in a dark parking lot with a bleeding and shot caregiver who was unconscious for a period of time."

We begin our analysis by noting that in order to sustain a conviction for child neglect under West Virginia Code § 61-8D-4(c) (2014), the State was required to show that Anthony M. grossly neglected K.M., and as a result of that neglect, he created a substantial risk of death or serious bodily injury.[56] As recounted above, the evidence—including cell phone location data and Brittany S.'s testimony—placed Anthony M. at the scene of the 2021 shooting. The spent shell casing found at the scene matched the firearm over which Anthony M. exercised control, and K.M. was alone at the scene in her car seat about five feet away from Brittany S. and close to the broken windshield where the bullet had ricocheted. Finally, the jury heard testimony that after the shooting, Brittany S., not Anthony M., called emergency responders. Construing this evidence in the light most favorable to the prosecution, a reasonable jury could have concluded that Anthony M. shot

---

[56] W. Va. Code § 61-8D-4(c).

Brittany S. while K.M. remained five feet away near the vehicle, that he then abandoned K.M. alone in the parking lot, strapped into her car seat, and that these actions constituted gross neglect creating a risk of death or serious bodily injury to K.M.

## C. Right to Remain Silent

We now turn to Anthony M.'s argument that the trial court should have granted his motion for a mistrial because the State violated his right to remain silent under the state and federal constitutions.[57] He maintains that, at trial, the State improperly asked Captain Gordon whether, when Anthony M. was taken into custody, he gave "his version of events," and that Captain Gordon improperly responded, "He did not." The State does not dispute that Captain Gordon's testimony was improper but maintains that "the circumstances and limited nature of the testimony did not rise to the level warranting a mistrial." We agree.

Our analysis is guided by the precept that "[u]nder the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-

---

[57] Although Anthony M. broadly references the state and federal constitutions in his assignment of error, his argument regarding the State's improper comments on his post-*Miranda* silence appear to similarly be rooted in West Virginia's constitutional protections.

trial silence or to comment on the same to the jury."[58]  In *State v. Hoard*,[59] we considered

a petitioner's appeal of his convictions based on the State's references to his pre-trial

silence during its opening statement and its cross examination of the petitioner.[60]  During

its opening statement, the State indicated that, over the course of the investigation, several

interviews were conducted but "[t]he one interview we didn't get was [Mr. Hoard] or his

girlfriend."  During the State's cross-examination of Mr. Hoard, Mr. Hoard maintained that

he "didn't murder that man."  The State asked: "But you never told police that, did you?"

Mr. Hoard's counsel immediately objected and asked for a mistrial. [61]  On appeal, because

it was not clear whether the references were to pre-arrest or post-*Miranda* silence, this

Court determined that the circuit court erroneously found that the references to Mr. Hoard's

pre-trial silence did not violate his right against self-incrimination.[62]  However, we

recognized the well-established rule in this State that "[f]ailure to observe a constitutional

right constitutes reversible error unless it can be shown that the error was harmless beyond

---

[58] Syl. Pt. 1, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977).  But we have since recognized that "[t]he . . . *Boyd* rule does not apply . . . [when] there is evidence that the defendant's silence occurred prior to his arrest and the giving of *Miranda* warnings." *State v. Ramsey*, 209 W. Va. 248, 255, 545 S.E.2d 853, 860 (2000). *See also State v. Walker,* 207 W. Va. 415, 419 n.2, 533 S.E.2d 48, 52 n.2 (2000) ("the protections afforded a defendant for post-*Miranda* silence are generally not available for pre-arrest silence.").

[59] 248 W. Va. 428, 889 S.E.2d 1 (2023).

[60] *Id*. at 435, 889 S.E.2d at 8.

[61] *Id*.

[62] *Id*. at 438, 889 S.E.2d at 12.

29

a reasonable doubt,"[63] and we determined that improper comments on a criminal defendant's pre-trial silence are subject to harmless error review. Ultimately, "in light of the brevity of such references coupled with the overwhelming evidence adduced against [Mr. Hoard]," we concluded in that case that the error was harmless beyond a reasonable doubt.[64]

Here, we find that the State commented on Anthony M.'s post-*Miranda* silence by eliciting the response from Captain Gordon that Anthony M. had not given his version of events, so we agree that his right against self-incrimination was violated. But the error was encapsulated in a single question, and Anthony M's pre-trial silence was not again referenced. When addressing the issue during the post-trial motions hearing the circuit court noted that "[i]t was a very quick exchange that I don't think caught anyone's attention particularly." Like the limited references made to Mr. Hoard's pre-trial silence in *Hoard*, the lone reference here during the State's direct examination of Captain Gordon was harmless in light of the brevity of the exchange. And because a circuit court's decision to grant or deny a motion for a mistrial "is a matter within the sound discretion of the trial court[,]"[65] we cannot say that the circuit court abused its discretion in determining that the

---

[63] *Id.*, Syl. Pt. 6 (citing Syl. Pt. 5, *State v. Blair,* 158 W. Va. 647, 214 S.E.2d 330 (1975)).

[64] *Id.* at 440, 889 S.E.2d at 13.

[65] Syl. Pt. 8, in part, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989).

30

error was harmless beyond a reasonable doubt and denying Anthony M.'s motion for a mistrial.

**D. Sylvia S.'s Testimony**

Next, we consider Anthony M.'s argument that Sylvia S.'s testimony that Brittany S. told her that Anthony M. threatened to kill her and that, as a result, she believed it was Anthony M. who ultimately shot her, was improperly proffered as lay opinion testimony under Rule 701 of the West Virginia Rules of Evidence[66] and constituted

---

[66] West Virginia Rule of Evidence 701 sets forth the requirements for lay opinion testimony. That Rule is reproduced below:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

improper propensity evidence under Rule 404(b)[67] of those Rules.[68]  The State maintains

that Anthony M.'s claim that the testimony constituted improper propensity evidence is

---

[67] West Virginia Rule of Evidence 404(b) prohibits admission of a person's prior bad acts as evidence of their character to prove that the person acted in conformity therewith. Subsections (1) and (2) of that rule are reproduced below:

*Rule 404. Character Evidence; Crimes or Other Acts*

. . .

(b)  Crimes, Wrongs, or Other Acts

(1)  Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)  Permitted Uses; Notice Required. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:

(A)  provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial;

(B)  do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice.

[68] On appeal, Anthony M. also broadly references "hearsay" in his argument regarding the lay opinion testimony of Sylvia S., but does not assign a separate, specific error of inadmissible hearsay evidence.  We note that we reviewed testimony similar to the testimony provided by Sylvia S. regarding Brittany S.'s phone call in *State v. Sutphin*, 195 W. Va. 551, 466 S.E.2d 402 (1995).  In that case, the victim's father testified as to what he was told by the victim regarding a threat to kill her made by the defendant.  There we found that the testimony presented hearsay within hearsay, and we evaluated the statements under Rule 805 of the West Virginia Rules of Evidence, governing hearsay within hearsay. *Sutphin,* 195 W. Va. at 560, 466 S.E.2d at 411.

We found the defendant's threat to the victim in that case was admissible either as an admission by a party opponent, and so non-hearsay, pursuant to Rule 801(d)(2), or,

misplaced, and that the circuit court committed no error in allowing the admission of Sylvia S.'s testimony under Rule 701.

We consider Anthony M.'s assignment of error regarding Sylvia S.'s testimony in two steps. First, we take up whether Sylvia S.'s testimony was properly admitted under Rule 701. We then analyze whether the testimony should have been precluded under Rule 404(b).

Rule 701 of the West Virginia Rules of Evidence provides the guidelines for admissibility of lay opinion testimony, and based on that we have held:

> In order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; (3) the opinion must be helpful in understanding the testimony or determining a fact in issue; and

---

alternatively, as hearsay admissible under Rule 803(3) as then-existing mental, emotional, or physical condition. *Sutphin*, 195 W. Va. at 560-62, 466 S.E.2d at 411-13. We then analyzed the victim's statement to her father and found that it was admissible under Rule 803(2), as an excited utterance. *Sutphin*, 195 W. Va. at 562-66, 466 S.E.2d at 413-16. As each level of the statement was admissible, then, we concluded that there was no abuse of discretion in permitting the State to offer "evidence of a statement made to the victim by the defendant, repeated by the victim to her father, and offered through the victim's father." *Id.* at 566, 466 S.E.2d at 417. So, to the extent Anthony M. presents a hearsay challenge here, we find that it is meritless for the same reasons found in *Sutphin*.

33

(4) the opinion must not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[69]

To the extent that Sylvia S. provided a lay opinion that Anthony M. should have been considered and investigated as a suspect for the 2021 shooting, or that in her lay opinion, he was the perpetrator, we agree with Anthony M. that the testimony was improper because it was not helpful to the jury in understanding the testimony and/or determining a factual issue in the case under the third "helpfulness" factor of the Rule 701 test. This Court analyzed the helpfulness factor in *State v. Nichols*.[70] In that case, Mr. Nichols was convicted for third offense DUI and driving on a suspended license after he ran into a tree on private property and fled the scene.[71] The State presented testimony from two witnesses, both of whom testified that they saw only Mr. Nichols at the accident scene. Both witnesses also gave their opinion under Rule 701 that Mr. Nichols was the driver of the car.[72] On appeal, Mr. Nichols contended that the opinion testimony did not comply with Rule 701 because the jury could "readily draw the necessary inferences and conclusions without the

---

[69] Syl. Pt. 1, *State v. Johnson*, 238 W. Va. 580, 797 S.E.2d 557 (2017).

[70] 208 W. Va. 432, 541 S.E.2d 310 (1999). *Nichols* was decided before Rule 701 was amended to include the requirement that the proffered lay opinion "must not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702." However, the *Nichols* Court's detailed analysis of the separate helpfulness factor is, all the same, instructive for our analysis.

[71] *Id*. at 436, 541 S.E.2d at 314.

[72] *Id*.

aid of an opinion."[73]  We noted our longstanding precedent that precludes lay witnesses from offering opinions when facts adequately enable the jury to reach its own conclusion,[74] and determined that under those facts, the observations made by the two witnesses—which were properly admitted into evidence—could have reasonably led the jury to conclude that Mr. Nichols was driving the car at the time of the car accident.[75]  Because the two witnesses essentially acted as a "thirteenth juror" in disseminating their opinion, the "helpfulness" element was not satisfied.[76]

Here, like there, the facts testified to by Sylvia S.—that Brittany S. had previously told her Anthony M. threatened to shoot her and the children—could reasonably have led the jury to conclude that Anthony M. was the perpetrator of the 2021 shooting. Because witnesses are not permitted to offer their lay opinion under Rule 701 where the facts adequately enable the jury to reach its own conclusion, we agree with Anthony M. that the opinion testimony that followed the testimony regarding the threat was improperly

---

[73] *Id*. at 440, 541 S.E.2d at 318.

[74] *Id.* (citing Syl. Pt. 4, *Overton v. Fields,* 145 W. Va. 797, 117 S.E.2d 598 (1960). ("When the opinion of a witness, not an expert, is offered in evidence, and he is no better qualified than the jurors to form an opinion with reference to the facts in evidence and the deductions to be properly drawn from such facts, his opinion evidence is not admissible.")

[75] *Id*.

[76] *Id*. at 441, 541 S.E.2d at 319.

admitted under Rule 701.[77]   Although we find error in the admission of Sylvia S.'s lay

opinion under Rule 701, we find that the error was harmless.  This Court has held that

"evidentiary errors are harmless if, without the inadmissible evidence, the State presented

sufficient evidence to support a conviction and the incompetent evidence did not prejudice

the jury:"[78]

> Where improper evidence of a nonconstitutional nature
> is introduced by the State in a criminal trial, the test to
> determine if the error is harmless is: (1) the inadmissible
> evidence must be removed from the State's case and a
> determination made as to whether the remaining evidence is
> sufficient to convince impartial minds of the defendant's guilt
> beyond a reasonable doubt; (2) if the remaining evidence is
> found to be insufficient, the error is not harmless; (3) if the
> remaining evidence is sufficient to support the conviction, an
> analysis must then be made to determine whether the error had
> any prejudicial effect on the jury.[79]

Even if we remove the opinion testimony of Sylvia S. from the State's case,

there was sufficient if not overwhelming evidence to support the convictions related to the

2021 shooting.  As previously discussed, Brittany S. offered testimony that Anthony M.

was the only other adult present before she woke up on the ground in a pool of her own

blood, detectives offered testimony that Anthony M. had previously sent a text message

---

[77] Because Sylvia S.'s testimony was clearly not helpful to the jury under Rule 701, we need not analyze the other factors under that rule.

[78] *State v. Kessler*, 248 W. Va. 289, 298, 888 S.E.2d 789, 798 (2023).

[79] Syl. Pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1971).

threatening to shoot Brittany S., the geolocation specialist testified that Anthony M.'s cell phone signals placed him at or near the scene of the shooting, and the forensic examiner opined that the firearm found at the Crestmont Avenue residence matched the spent shell casing found at the scene of the 2021 shooting. And to determine whether the error had a prejudicial effect on the jury, "[o]ur cases consistently have held that non-constitutional errors are harmless unless the reviewing court has grave doubt as to whether the erroneously admitted evidence substantially swayed the verdict."[80] In this case, because overwhelming evidence otherwise established Anthony M.'s guilt, this Court has no grave doubt as to whether the inadmissible evidence substantially swayed the verdict. So, although the testimony was inadmissible to the extent that Sylvia S. provided a lay opinion that Anthony M. was the perpetrator of the 2021 shooting, the error was harmless and does not warrant a new trial on these grounds.

Having established that the circuit court improperly—but harmlessly— admitted Sylvia S.'s lay opinion testimony under Rule 701, we now turn to the question of whether the remainder of her testimony recounting that Brittany S. called her, crying, and asked to be picked up because Anthony M. had a gun and was threatening her and their children, which formed the basis of her opinion that Anthony M. was the perpetrator of the shooting constituted improper Rule 404(b)(1) propensity evidence. The circuit court determined that the evidence was admissible under this Court's precedent allowing the

---

[80] *State v. Potter*, 197 W. Va. 734, 748, 478 S.E.2d 742, 756 (1996).

37

admission of specific incidents of domestic violence that occurred close in time to the indicted charges to "complete the story" of the relationship.

We begin our analysis by briefly reviewing the relevant evidentiary rule. Under the exclusionary principle found in Rule 404 of the West Virginia Rules of Evidence, "evidence of crimes, wrongs, or acts is inadmissible to prove that a person acted in conformity therewith on a particular occasion."[81] But evidence of prior bad acts is not governed by that rule when the evidence is "intrinsic" rather than "extrinsic."[82] Thus, whether the court properly determined that Sylvia S.'s testimony fell outside of the purview of Rule 404 hinges on whether the evidence of other bad acts referenced in her testimony is "intrinsic" to the crimes charged in the indictment.

This Court considered similar facts in *State v. McKinley*.[83] In that case, Mr. McKinley was convicted of first-degree murder after shooting and killing the victim.[84] At the time that Mr. McKinley shot the victim, she had a protective order in place that prevented him from having any contact with her.[85] During the trial, the State introduced

---

[81] W. Va. R. Evid. 404(b)(1).

[82] *State v. LaRock*, 196 W. Va. 294, 317 n.29, 470 S.E.2d 613, 636 n.29 (1996).

[83] 234 W. Va. 143, 764 S.E.2d 303.

[84] *Id*. at 148, 764 S.E.2d at 308.

[85] *Id*.

evidence of two incidents of earlier domestic violence between Mr. McKinley and the victim—one occurring two months before the murder, and one occurring about a month before the victim was killed.[86] On appeal, Mr. McKinley asserted that the evidence was inadmissible under Rule 404(b). The State argued, in part, that the evidence was intrinsic to the murder and therefore outside the scope of Rule 404(b).[87]

We first observed our long-standing precedent that "evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)."[88] We noted that "evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are 'intrinsically intertwined' or both acts are part of a 'single criminal episode' or the other acts were necessary preliminaries to the crime charged."[89] We then considered the 2004 case *State v. Dennis*.[90] In that case, this Court permitted the admission of an incident of domestic violence that occurred three months before Mr. Dennis was charged with kidnaping, second-degree robbery, two counts of second-degree sexual assault, violating a domestic violence protective order, and domestic battery.[91] In *Dennis*, we

---

[86] *Id.*

[87] *Id.* at 154-155, 764 S.E.2d at 314-315.

[88] *Id.* (quoting *State v. Harris*, 230 W. Va. 717, 722 742 S.E.2d 133, 138 (2013)).

[89] *Id.* (quoting *LaRock*, 196 W. Va. at 312 n.29, 470 S.E.2d at 631 n.29).

[90] 216 W. Va. 331, 607 S.E.2d 437.

[91] *Id.* at 352, 607 S.E.2d at 458.

concluded the evidence was necessary "to complete the story of the crimes on trial" and provide context to the crimes charged, particularly "in light of the domestic violence overlay to the pattern of behavior."[92]  Applying the analysis from *Dennis*, we concluded that the two domestic violence incidents offered as evidence during Mr. McKinley's trial were "necessary to place [the victim]'s death in context with her relationship with Mr. McKinley, and to complete the story of the violence Mr. McKinley inflicted on her."[93]  Indeed, in that case we held that "[e]vents, declarations, and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and are admissible at trial."[94]

In this case, to the extent that Sylvia S. offered testimony that prior to the 2020 shooting, Brittany S. called her, crying, and asked to be picked up because Anthony M. had a gun and had threatened to kill her, this testimony was "intrinsic" to the charges in the indictment related to the 2020 shooting because it was necessary to place the shooting in context with Brittany S.'s relationship with Anthony M., and it completed the story of the violence that he allegedly inflicted on her.  And because the earlier threat to shoot Brittany S. occurred close in time and was causally connected with the alleged 2020 shooting, we cannot say that the court erred in allowing Sylvia S. to testify to the extent

---

[92] *Id.*

[93] *McKinley*, 234 W. Va. at 156, 763 S.E.2d at 316.

[94] *Id.*, Syl. Pt. 7.

40

that the testimony discussed the underlying facts forming the basis of her opinion that Anthony M. was the perpetrator. So, we reject Anthony M.'s assignment of error related to Sylvia S.'s testimony.

## IV. CONCLUSION

For the reasons discussed above, we affirm, in part; vacate, in part; and remand the October 24, 2022, order of the Circuit Court of Kanawha County.

Affirmed, in part; vacate, in part; and remanded.

41